No. 3-05-0262
_____

____

filed April 3, 2006

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2006

ILLINOIS FARMERS INSURANCE          )          Appeal from the Circuit Court
COMPANY,                            )          for the Twelfth Judicial Circuit,
                                    )          Will County, Illinois
        Plaintiff-Appellant,        )
                                    )
        v.                          )  No. 04-MR-118
                                    )
THOMAS KURE AND CINDY KURE,         )     The Honorable
                                    )          Herman S.
                                    Haase,
        Defendants-Appellees.       )
                                    Judge, Presiding.
_____
_____

        JUSTICE McDADE delivered the opinion of the court:

_____

_____

        Plaintiff-appellant, Illinois Farmers Insurance Company (Farmers) filed a

complaint seeking declaratory judgment that it has no duty to defend or indemnify

defendants-appellees, Matthew Kure and his parents, Thomas and Cindy Kure, against

a negligence lawsuit against Matthew.  Defendants filed a counterclaim seeking

declaratory judgment that Farmers does have a duty to defend and indemnify.  The

parties filed motions for summary judgment.  Following a hearing, the circuit court of Will

County granted Farmers' motion as to Matthew, denied its motion as to Thomas and

Cindy, denied defendants' motion for summary judgment as to Matthew and granted defendants' motion as to Thomas and Cindy. For the reasons that follow, we affirm.

BACKGROUND

Farmers insures Matthew Kure and his parents Thomas and Cindy under a homeowner's liability policy. Kyle Signorelli and his parents filed a complaint against Matthew, Thomas, and Cindy Kure seeking damages for injuries he sustained as the result of an altercation between Kyle and Matthew. The complaint alleged that Matthew started an altercation with Kyle and that during the course of the altercation Matthew executed a "pile-driver" type of maneuver by lifting Kyle from the ground then driving Kyle's head into the ground with the weight of his body. As a result Kyle is paralyzed from the neck down.

Count I of the Signorelli complaint alleged that Matthew negligently injured Kyle. Count II alleged Thomas and Cindy Kure were negligent for providing Matthew with the vehicle he used to travel to Kyle's house and for failing to control their son. Count IV alleged willful conduct and battery against Matthew. The remaining counts of the Signorelli complaint are not at issue in this appeal.

Thomas and Cindy sought coverage for defense of the complaint and indemnity from Farmers. Farmers filed an action for declaratory judgment that it has no duty to defend or indemnify Matthew, Thomas, or Cindy because (1) the Kures' policy covered occurrences, (2) the policy defined an "occurrence" as an accident, and (3) the injury did not result from an accident. Farmers also alleged it has no duty to defend or indemnify based on the policy's intentional conduct exclusion. Farmers argued that

Thomas and Cindy did not have coverage for their allegedly "negligent" conduct because Matthew's conduct was intentional. Thomas and Cindy responded that the allegations against them were based on negligence, not intentional conduct, and therefore the exclusion did not apply.

Following argument the trial court found that Farmers has a duty to defend Thomas and Cindy. The court found that Farmers did not have a duty to defend or indemnify Matthew. The court granted Farmers' motion for summary judgment as to Matthew, denied Farmers' motion as to Thomas and Cindy, denied Matthew's motion for summary judgment, and granted Thomas and Cindy's motion for summary judgment. Finally, the court entered an order that no just reason existed to delay appeal of its order. Farmers appeals the court's order granting Thomas and Cindy's motion for summary judgment on its action seeking a declaratory judgment that Farmers has a duty to defend the complaint against Thomas and Cindy. Matthew did not file a cross-appeal of the court's order denying his motion for summary judgment.

ANALYSIS

Summary judgment is proper where, when viewed in the light most favorable to the nonmoving party, the pleadings, depositions, admissions, and affidavits on file reveal that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2000). "The standard of review for the entry of summary judgment is *de novo*." *General Casualty Insurance Co. v. Lacey*, 199 Ill. 2d 281, 284, 769 N.E.2d 18, 20 (2002).

"It is the general rule that the duty of the insurer is determined by the allegations of the underlying complaint. [Citation.] A duty to defend arises

˘3˘

if the complaint's allegations fall within or potentially within the coverage provisions of the policy. *** The threshold requirements for the complaint's allegations are low. [Citation.] In a court's determination of the duty to defend, the underlying complaint is to be liberally construed in favor of the insured, and doubts and ambiguities are to be construed in favor of the insured. [Citation.] A determination regarding an exclusionary clause is subject to the same liberal standard. *** 'An insurer may not justifiably refuse to defend an action against its insured unless it is *clear* from the face of the underlying complaints that the allegations fail to state facts which bring the case within, or potentially within, the policy's coverage.' (Emphasis in original.) *Wilkin Insulation Co.,* 144 Ill. 2d at 73, 578 N.E.2d at 930." *Lyons v. State Farm Fire and Casualty Co.*, 349 Ill. App. 3d 404, 406-07, 811 N.E.2d 718, 721-22 (2004).

The sole issue before us is whether Farmers had a duty to defend Thomas and Cindy under their homeowner's liability policy. That policy states, in pertinent part, as follows:

"We will pay those damages which an insured becomes legally obligated to pay because of bodily injury, property damage or personal injury resulting from an occurrence to which this coverage applies.

'Occurrence' means an accident, including exposure to conditions which result during the policy period in bodily injury or property damage. Repeated or continuous

exposure to the same general conditions is considered to be one occurrence."

On appeal, Farmers raises two arguments. First, Farmers argues that Kyle's injury did not result from an "occurrence" as defined in the homeowner's policy and therefore the complaint does not make allegations that fall within the coverage provided by the policy. Second, Farmers argues that if the allegations of the complaint do fall within the policy's coverage, Matthew's intentional conduct would trigger the intentional act exclusion as it relates to Thomas and Cindy.

In support of its first argument, Farmers states that Kyle's injuries resulted from Matthew's intentional acts and the trial court found Matthew's actions resulting in Kyle's injuries were not accidental when it found Farmers has no duty to defend Matthew. Farmers argues that because "there is no separate bodily injury being claimed by [Kyle] which result[ed] from the alleged negligent conduct of Thomas and Cindy Kure," Kyle's injuries were not the result of an "occurrence" and the policy does not apply.

In support of its second argument, Farmers cites, *inter alia*, *Northbrook Property & Casualty Co. v. Transportation Joint Agreement*, 194 Ill. 2d 96, 741 N.E.2d 253 (2000). That case arose from an accident where "a METRA train collided with a school bus operated jointly by the school districts. Several students were killed and many others were injured, resulting in numerous lawsuits against the school districts." *Transportation Joint Agreement*, 194 Ill. 2d at 97, 741 N.E.2d at 254. Northbrook insured the school districts under a commercial general liability policy. That policy contained the following exclusion:

"'"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated or rented or loaned to any insured. Use includes operation and "loading or unloading." *** "Auto" means a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment.'" *Transportation Joint Agreement*, 194 Ill. 2d at 98, 741 N.E.2d at 254.

The trial court held that Northbrook "had no duty to defend the school districts against the students' lawsuits because the injuries arose out of the use or operation of a bus." The appellate court reversed, finding that "the students' lawsuits against the school districts adequately alleged that the injuries could have arisen from causes other than use or operation of the bus, such as failure of the school districts to adequately plan and inspect bus routes and warn bus drivers of potential hazards." *Transportation Joint Agreement*, 194 Ill. 2d at 98, 741 N.E.2d at 254. The supreme court reversed the appellate court, reasoning as follows:

"The policy excludes injuries arising from the school districts' use or operation of a motor vehicle. Allegations that the school districts inadequately planned and inspected bus routes or failed to warn bus drivers of potential hazards along the routes are nothing more than rephrasings of the fact that the students' injuries arose from the school districts' use or operation of a motor vehicle. Contrary to the appellate court's holding, the students' complaints failed to allege that the injuries

˘6˘

arose from events 'wholly independent of any negligent operation of the bus', quoting *Northbrook Property & Casualty Insurance Co. v. Transportation Joint Agreement*, 309 Ill. App. 3d 261, 266 (1999)"

*Transportation Joint Agreement*, 194 Ill. 2d at 98-99, 741 N.E.2d at 254. Farmers argues for a similar result here, where the policy excludes coverage for injuries arising from intentional acts and allegations that Thomas and Cindy failed to adequately supervise Matthew are nothing more than rephrasings of the fact that Kyle's injury arose from an intentional act by an insured.

Thomas and Cindy respond to both of Farmers' arguments by first asserting that, under this policy, "[w]hether one who contributes to an injury is negligent is independent from the question of whether another who directly caused the injury acted intentionally." This is because the policy contains a severability clause that states "[t]his insurance applies separately to each insured." Thomas and Cindy reason that because of the severability clause, the court is bound to determine whether an "occurrence" occurred as if Thomas and Cindy were the only insureds.

In support of that argument, they cite *King v. Dallas Fire Insurance Co.*, 85 S.W.3d 185, 187, 191 (Tex. 2002), a case decided by the Supreme Court of Texas. In *King* the insured's employee intentionally injured a third party. The injured party sued the insured for negligent hiring, training, and supervision. The issue in that case was "whether an employer's alleged negligent hiring, training, and supervision constitute[d] an 'occurrence' under the terms of the insurance policy although the injury was directly caused by the employee's intentional conduct." Similar to this case, the insurance company argued that the injury was the result of an intentional act, while the insured

argued that, from his standpoint, the injuries resulted from an accident, *i.e.*, his own negligence. *King*, 85 S.W.3d at 188.

The policy in *King* contained language stating that the insurance applied as if each named insured were the only named insured and separately to each insured against whom a claim is made. The policy further provided that the court was to treat each named insured as if she were the only named insured. The court concluded that from the employer's standpoint the allegations of the complaint alleged an "occurrence" in part because to hold otherwise would impute the intentional actor's intent to the separate insured. The court found that at its core, the insurer's argument was that the insured's employee's intent should control whether there is a duty to defend the insured under the policy. The court held "that argument not only ignores the policy language that delineates between separate insureds, it also ignores the intended-injury exclusion provision. That exclusion, which excludes coverage for injuries 'intended from the standpoint of the insured,' would have no purpose if all intended injuries were excluded at the outset from coverage because they would not be an 'occurrence.'" *King*, 85 S.W.3d at 189.

Finally, Thomas and Cindy respond that Farmers is seeking to impute Matthew's intentional conduct to them, and that Illinois "refuses to impute the intentional conduct of one insured to another innocent insured." Farmers denies it is attempting to impute Matthew's conduct to Thomas and Cindy by arguing that because the policy uses the phrase "an insured" in the intentional act exclusion, the exclusion is broadened to exclude Thomas and Cindy from coverage for injuries triggered by Matthew's intentional (and therefore excluded) conduct. For this argument, Farmers relies on *Allstate*

*Insurance Co. v. Smiley*, 276 Ill. App. 3d 971, 659 N.E.2d 1345, (1995), where the insured ran a daycare business out of her home, and one of the children in her care was injured by the allegedly negligent act of her husband. The husband contended that because he was not engaging in the business, the exclusion in their policy for injuries related to business activities did not apply to him. The court held as follows:

"The word 'an' is an indefinite article and is applied to more than one individual object. (*Allstate Insurance Co. v. Foster* (D. Nev. 1988), 693 F. Supp. 886, 889; see also Black's Law Dictionary 84 (6th ed. 1990) (defining 'an' as '[t]he English indefinite article').) Also, the word 'an' is often used in the sense of 'any' (*Foster*, 693 F. Supp. at 889; see also Black's Law Dictionary 84 (6th ed. 1990) (stating that the word 'an' is 'equivalent to "one" or "any"')), and use of the phrase 'an insured' in an exclusionary clause unambiguously means 'any insured' (*Allstate Insurance Co. v. Freeman* (1989), 432 Mich. 656, 698-99, 443 N.W.2d 734, 753-54). In the present case, therefore, employing the words 'an' and 'any' broadened the exclusions to include injuries triggered by one insured in connection with the business activities of another insured."

*Smiley*, 276 Ill. App. 3d at 979, 659 N.E.2d at 1352.

Thomas and Cindy respond *Smiley* is inapposite to the case at bar because, there, the court concluded that "the injuries allegedly caused by David Smiley's negligence were connected to his wife's business activities" in that the duty arose because of the business. *Smiley*, 276 Ill. App. 3d at 980, 659 N.E.2d at 1352. On the contrary, in the present case, Thomas and Cindy played no role in Matthew's conduct.

With that background in mind, we turn to the issues Farmers raises in support of its appeal.

A. Whether Matthew's Act Constitutes an "Occurrence" for Purposes of Thomas and Cindy's Insurance Coverage

In Illinois, as in Texas, whether an occurrence has occurred is determined from the insured's standpoint. See *Country Cos. v. Bourbon*, 122 Ill. App. 3d 1061, 1067, 462 N.E.2d 526, 530 (1984) ("we think the better rule to be that which considers the injury from the standpoint of the [insured], rather than that which centers upon a characterization of the actions *** as intentional or accidental. *** Thus, when viewing the incident we have related from the standpoint of the [insured], there can be no doubt that insofar as he was concerned it was indeed an accident, despite the fact that the injuries he received were the result of an intentional and criminal act"); *Dyer v. American Family Insurance Co.*, 159 Ill. App. 3d 766, 772, 512 N.E.2d 1071, 1074 (1987) (each construing uninsured motorist insurance coverage).

We find *Lyons v. State Farm Fire & Casualty Co.*, 349 Ill. App. 3d 404, 811 N.E.2d 718 (2004), instructive in this case. There, the insurer argued that the insured's act of building levees that allegedly damaged another's property "was intentional and therefore was not an 'occurrence' within the meaning of the policy, which define[d] 'occurrence' as 'an accident.'" *Lyons*, 349 Ill. App. 3d at 408, 811 N.E.2d at 722. The insured's policy excluded coverage for property damage "that 'is either expected or intended by the insured.'" *Lyons*, 349 Ill. App. 3d at 407, 811 N.E.2d at 722. The *Lyons* court began by noting that "[i]n determining what constitutes an accident, Illinois adheres to the rule of law promulgated by the United States Supreme Court more than

˘10˘

a century ago in *United States Mutual Accident Ass'n v. Barry,* 131 U.S. 100, 33 L. Ed. 60, 9 S. Ct. 755 (1889)."  *Lyons,* 349 Ill. App. 3d at 408, 811 N.E.2d at 723.  The Illinois Supreme Court later summarized the *Barry* rule as follows:

> "'[I]f an act is performed with the intention of accomplishing a certain
> result, and if, in the attempt to accomplish that result, another result,
> unintended and unexpected, and not the rational and probable
> consequence of the intended act, in fact, occurs, such unintended result is
> deemed to be caused by accidental means.'" *Lyons,* 349 Ill. App. 3d at
> 409, 811 N.E.2d at 723, quoting *Yates v. Bankers Life & Casualty Co.,*
> 415 Ill. 16, 19, 111 N.E.2d 516, 517-18 (1953).

 "The factual allegations of the complaint, rather than the legal theories, determine a duty to defend."  *Lyons,* 349 Ill. App. 3d at 407, 811 N.E.2d at 722.  Examining the allegations of the complaint, the *Lyons* court found that it contained no allegations the insured expected or intended to build his levees so that they extended onto the underlying plaintiff's property.  The court concluded that "[c]onstruing the policy and complaint liberally and resolving all doubts in favor of the insured, *** the allegations of the underlying complaint are potentially within the coverage under the policy" (*Lyons,* 349 Ill. App. 3d at 412, 811 N.E.2d at 726) and therefore the insurer had a duty to defend.

Viewing the incident from Thomas and Cindy's point of view, we hold that the complaint makes allegations that are within the coverage provided by the policy.  The underlying complaint in the present case alleges only negligence by Thomas and Cindy and makes no allegation that they intended that as a result of their alleged act of

negligence, specifically, failing to control Matthew and providing him with the means of traveling to Kyle's home, that Matthew would injure Kyle.

### B. Whether the Intentional Act Exclusion Applies

The intentional act exclusion in the Kures' homeowner's liability policy reads as follows:

"We do not cover bodily injury, property damage or personal injury which is either:

(a) caused intentionally by or at the direction of an insured; or

(b) results from any occurrence caused by an intentional act

or any insured where the results are reasonably

foreseeable."

A duty to defend arises if the complaint's allegations potentially fall within the coverage provisions of the policy. See *Lyons*, 349 Ill. App. 3d at 406, 811 N.E.2d at 721-22. *Lyons* found that the unintended consequences of the insured's intended act brought the underlying claim potentially within the policy's coverage. There, the policy excluded coverage for property damage that was " 'either expected or intended by the insured.' " *Lyons*, 349 Ill. App. 3d at 407, 811 N.E.2d at 722. Similarly, in the present case, the policy excludes coverage for bodily injury that "results from any occurrence caused by an intentional act *** [or] where the results are reasonably foreseeable." As the *Lyons* court noted, that language places the "focus of the inquiry in determining whether an occurrence is an accident [on] whether the *injury* is expected or intended by the insured, not whether the *acts* were performed intentionally." (Emphases in original.) *Lyons*, 349 Ill. App. 3d at 409, 811 N.E.2d at 723.

˘12˘

In *Williams v. American Country Insurance Co.*, 359 Ill. App. 3d 128, 139, 833 N.E.2d 971, 980 (2005), the court construed a policy which excluded coverage for bodily injury expected or intended from the standpoint of the insured. In *Williams*, a cab company sought coverage for its driver's traffic accident in which the driver struck the pedestrian. The policy's coverage exclusion for expected or intended injuries became an issue because the driver was convicted of battery as a result of the occurrence. *Williams*, 359 Ill. App. 3d at 130, 833 N.E.2d at 973. *Williams* held that the supreme court's holding in *American Family Mutual Insurance Co v. Savickas*, 193 Ill. 2d 378, 739 N.E.2d 445 (2000), precluded the driver from contesting the fact that his battery conviction established that his conduct was intentional. The *Williams* court held that the language of the policy allowed "coverage to be excluded as to one insured and remain in effect as to the other insured." *Williams*, 359 Ill. App. 3d at 139, 833 N.E.2d at 980. Coverage would be excluded as to the cab company "only if [it] 'expected or intended' the injury." *Williams*, 359 Ill. App. 3d at 139-40, 833 N.E.2d at 980.

The trial court found that Matthew's acts were intentional. However, Thomas and Cindy did not commit an intentional act and did not participate in Matthew's conduct. "[T]he duty of the insurer is determined by the allegations of the underlying complaint." *Lyons*, 349 Ill. App. 3d at 406, 811 N.E.2d at 721-22. Again, the complaint against Thomas and Cindy contains no allegation that Thomas and Cindy intended or even expected that as a result of their alleged negligence Matthew would injure Kyle. Nor does the complaint allege that such a result was reasonably foreseeable from Thomas and Cindy's allegedly negligent acts. Accordingly, we hold the intentional act exclusion does not apply to Farmers' coverage of Thomas and Cindy.

CONCLUSION

For all of the foregoing reasons, the circuit court's order granting Thomas and

Cindy's motion for summary judgment on its action seeking a declaratory judgment that

Farmers has a duty to defend the complaint against them is affirmed.

Affirmed.

BARRY and O'BRIEN, J.J., concur.